## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**SWARTZ CAMPBELL LLC**                          **Attorneys for Plaintiff,**
**BY:** William T. Salzer                        Nationwide Mutual Insurance Company
Identification Nos. 42657
One Liberty Place - 38th Floor
1650 Market Street
Philadelphia, PA 19103
(215) 299-4346
wsalzer@swartzcampbell.com

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY | |
| Plaintiff, | CIVIL ACTION |
| vs. | |
| DAVID RANDALL ASSOCIATES, INC. AND CITY SELECT AUTO SALES, INC. individually and on behalf of identified class members, | NO. 20-4972-JMY |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff, Nationwide Mutual Insurance Company ("Nationwide"), by its undersigned counsel, submits the following Memorandum of Law in support of its Motion for Summary Judgment on its Declaratory Judgment Complaint. For the reasons discussed *infra*, Nationwide no obligation to indemnify David Randall Associates, Inc. ("DRA") for the judgment secured by City Select Auto Sales, Inc., as class representative, in the underlying civil action, <u>City Select Auto Sales, Inc. v.</u>

David Randall Associates, Inc., No. 11-cv-2658 (D.N.J.).  Nationwide seeks entry of summary judgment in its favor on its declaratory judgment complaint on the grounds that the commercial general liability insurance policy issued to DRA affords no liability coverage for allegations of liability based on DRA's violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, for the sending of unsolicited fax advertisements to City Select and other members of the class.

## I.   PROCEDURAL HISTORY

On October 7, 2020, Nationwide instituted this declaratory judgment action against City Select Auto Sales, Inc. and David Randall Associates, Inc. in which it seeks a declaration that it is not obligated to provide insurance coverage to indemnify DRA for the class action judgment secured by City Select.  On November 20, 2020, City Select filed a motion to dismiss or stay the action pursuant to Fed. R. Civ. P. 12 (b)(1) which was opposed by Nationwide.  City Select asserted that the amount in controversy did not meet jurisdictional requirements based on its view that the Complaint depended on the aggregation of the individual class members' monetary claims and that the court should abstain from exercising jurisdiction based on the filing of City Select's declaratory judgment action pending in an Ohio court in Franklin County, Ohio.  Nationwide opposed the motion.

The parties have conducted discovery pertinent to Nationwide's declaratory judgment complaint.  As City Select has not answered the Plaintiff's Complaint, nor to date has asserted any affirmative claim for recovery in this civil action as a judgment creditor, no discovery or motions practice has taken place regarding any

possible affirmative claim by City Select or defenses thereto.  City Select has not instituted garnishment proceedings.  The instant motion is ripe for adjudication on Nationwide's request for declaratory relief.

## II.   STATEMENT OF FACTS

### A.   The Prior Declaratory Judgment Action

This is the second declaratory judgment action arising from the underlying civil action in which Nationwide, the successor in interest to Harleysville Mutual Insurance Company ("Harleysville"), seeks a declaration that the Harleysville commercial general liability insurance policy issued to DRA does not afford liability insurance coverage for the judgment obtained by City Select for DRA's violation of the TCPA by reason of the sending of unauthorized faxes. On July 24, 2012, Nationwide instituted a declaratory judgment action in this court against its policyholder, DRA, and its principal Raymond H. Miley, III ("Miley"), in which it sought a declaration that it was not obligated to defend or potentially indemnify DRA and Miley for the City Select lawsuit. Complaint, Exhibit D.

In the 2012 Complaint, Nationwide averred that insurance coverage was not afforded under the insuring agreement for Coverage A-Bodily Injury and Property Damage Liability or Coverage B-Personal and Advertising Injury Liability. Nationwide further averred that the policy removed coverage for liability for the sending of unsolicited faxes, including liability under the Telephone Consumer Protection Act ("TCPA"). Id. DRA filed its Answer to the Complaint, asserted

affirmative defenses and made a counterclaim for coverage.  <u>See</u> Complaint, Exhibit E.

On January 24, 2013, the Honorable J. Curtis Joyner, granted summary judgment in favor of Nationwide and held that it had no duty to defend or to indemnify DRA or Miley in the City Select Action.  <u>See</u> Complaint, Exhibit F. Judge Joyner held that the insured's sending of unsolicited fax advertisements to the class members was not accidental conduct within the meaning of the policy term "occurrence" for purposes of triggering "property damage" liability coverage under Coverage A.  <u>Nationwide Mut. Ins. Co. v. David Randall Associates, Inc</u>., No. 12-cv-4208, 2013 WL 271816 at *5 (E.D. Pa. Jan. 24, 2013).  Judge Joyner further noted that DRA and Nationwide had agreed that no coverage existed under the "personal and advertising injury" coverage of the policy.  <u>Id</u>. at footnote 2.

On January 9, 2014, the Third Circuit affirmed the judgment of the district court in which it held that the insured's liability for sending unsolicited faxes was not fortuitous irrespective of whether DRA was aware that such conduct violated the TCPA.  The court held that Nationwide did not have a duty to defend or indemnify DRA and Miley.  <u>Complaint</u>, Exhibit G.  <u>Nationwide Mut. Ins. Co. v. David Randall Associates, Inc</u>., No. 13-1515, 551 Fed. Appx. 638 (3d Cir. Jan. 9, 2014).  As DRA conceded the absence of "personal and advertising injury" coverage at the district court level, the Third Circuit opinion only addressed "property damage" liability under Coverage A.

B. <u>The Harleysville Commercial General Liability Insurance Policy</u>

Harleysville insured DRA under a commercial general liability policy (Policy No. MPA 9G7630) which was in effect during the term, July 1, 2005 through July 1, 2006 and encompassed the time period during which the faxes were sent. <u>See</u> Exhibit H to Complaint. <u>Statement of Undisputed Material Fact</u> (SUMF) Nos. 1, 2. The policy was a renewal of a prior policy term. <u>SUMF No. 1</u>. The Policy at Section I-Coverage A provided "property damage" liability coverage where "property damage" was caused by an "occurrence" defined as an accident. Complaint, <u>Document 1-8</u>, pp. 56, 69 of 156. The Policy at Section I-Coverage B conferred coverage for "personal and advertising injury" liability. The insuring agreement states, in pertinent part, as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.

<u>Document 1-8</u>, page 60 of 156. The policy defined "personal and advertising injury" as "injury … arising out of one or more of the following offenses:

> a. False arrest, detention or imprisonment;
>
> b. Malicious prosecution;
>
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

5

d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.   The use of another's advertising idea in your "advertisement"

g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement".

<u>Document 1-8</u>, page 69.

The renewal policy for the July 1, 2005 term was issued by Harleysville on July 6, 2005. <u>Affidavit</u>, Lori Clemens-Moyer,¶7, Exhibit B.   The renewal policy contained a form notice identified on the renewal Declarations as ST-7511 and was notated on the Declarations with an asterisk, stating: "Indicates a new or replacement form". <u>Document 1-8</u>, page 9. <u>Affidavit</u>, Clemens-Moyer, ¶9, Exhibit B.   This notice states: "your renewal policy has a new form titled Exclusion-Unsolicited Faxes, Telephone Calls and Emails attached to it.   This represents a reduction in coverage". <u>Document 1-8</u>, page 46.   The notice states that the form excludes "personal and advertising injury arising from unsolicited faxes which are subject to any state or federal law including the TCPA. <u>Id</u>.

The renewal policy contained Endorsement CG-7248, captioned Exclusion-Unsolicited Faxes, Telephone Calls and Emails. <u>Document 1-8</u>, page 86. <u>Affidavit</u>, Clemens-Moyer, ¶10.   The endorsement states that Paragraph 2. Exclusions of Coverage B Personal and Advertising Injury Liability is amended by the addition of the following:

This insurance does not apply to:

**o.    Unsolicited faxes, telephone calls and emails**

> "Personal and advertising injury" arising from unsolicited faxes … which are subject to and prohibited by any state or federal law … governing the abuses associated with unsolicited faxes … including but not limited to: the Federal Telephone Consumer Protection Act.

<u>Id</u>.   The renewal policy Declarations and the new policy forms and endorsements were, as a standard practice, mailed within a day or two of the July 6, 2005 issuance date as shown on the Declarations.   <u>Affidavit, Clemens-Moyer</u>, ¶15.   The renewal Declarations and applicable forms were sent to the insurance agent for David Randall Associates, Lechner & Stauffer, Inc. as the agency had elected to receive the agent's copy and the insured's copy of the renewal Declarations.   <u>Id</u>. at ¶14.   <u>Deposition</u>, Clemens-Moyer, pp. 28-29, Exhibit F. See also <u>Deposition</u>, Carol Kress, pp. 14-16, 19-20, attached as Exhibit G.   The Lechner & Stauffer agency documented on its logs the receipt of the renewal policy on July 19, 2005.   <u>Deposition</u>, Carol Kress, pp. 44-47, attached as Exhibit G.

**C.    <u>David Randall Associates' Reliance On Independent Insurance Agency-Lechner & Stauffer</u>**

David Randall Associates procured the Harleysville Policy through Lechner & Stauffer, Inc., an insurance brokerage, located at 589 Main Street, Pennsburg, Pennsylvania.   <u>See</u> Deposition Raymond Miley, III, pp. 14-17, attached as Exhibit D.   <u>See also</u> Deposition David Kauffman, pp. 8, 11-14, 22-24, attached as Exhibit E. Kauffman testified that he would have ordinarily called several different insurers to determine underwriting interest, coverage availability, and pricing when

7

identifying an insurer to place the business with.  <u>Dep. Kauffman</u>, p. 17.   Kauffman testified that when seeking insurance for David Randall Associates, he would be looking to secure the best coverage for the best price.  <u>Dep. Kauffman</u>, pp. 17-18, 20.

The Lechner agency negotiated with Harleysville on behalf of David Randall Associates with regard to coverage and pricing for the renewal of the commercial lines policy for the July 2005-July 2006 term.  <u>Dep. Kauffman</u>, pp. 24-27.  On June 27, 2005, Kauffman conveyed an instruction to the Harleysville underwriter, Judy Davis to bind a renewal commercial lines policy, effective July 1, 2005.   <u>Dep. Kauffman</u>, pp. 24-25.   David Randall Associates dealt only with its insurance agent, Lechner & Stauffer, not the insurance company, and relied on the agent to review their business and advise what was needed for insurance protection.  <u>Dep. Miley</u>, pp. 18-19.  David Randall Associates' principal, Raymond Miley, had no present recollection of having reviewed any insurance policy including the policy renewals.  <u>Dep. Miley</u>, p. 22.

### D.    <u>The City Select Complaint Against David Randall Associates</u>

In the City Select Complaint, it was alleged that on April 4, 2006 and May 15, 2006, the Defendants transmitted by telephone facsimile machine unsolicited fax advertisements to City Select. <u>See</u> City Select Complaint, ¶13, attached as Exhibit B to Nationwide Complaint.  It was alleged that the Defendants faxed the same form to 29,113 unique fax numbers during the period March 29, 2006 through May 16, 2006.   <u>Id.</u> at ¶14.  It was alleged in the underlying action that the Defendants did not have the recipients' prior express invitation or permission to

send the faxes.  Id. at ¶15.  It was alleged that Mr. Miley approved, authorized and participated in the scheme to broadcast faxes by directing a list to be purchased and assembled, by directing third parties to send the faxes, approving the faxes, determining the number and frequency of the transmissions and approving and paying third party vendors to send the faxes.  Id. at ¶12, 15.

City Select alleged that the Defendants knew or should have known that the class members had not given permission to fax advertisements and that they did not have an established business relationship with DRA.  Id. at ¶27.  City Select alleged that the Defendants' actions caused the recipients to lose paper and fax toner and that they unlawfully interrupted the Plaintiff and other class members' privacy interest in being left alone. Id. at ¶28.  City Select averred that it and the class members were entitled to recovery of statutory damages under the TCPA in an amount of $500.00 for each violation or $1,500.00 for each willful violation, as well as recovery of costs.  See Wherefore Clause of City Select Complaint.

In the City Select action, City Select issued its amended Self-Executing Disclosures on May 15, 2014 pursuant to Fed. R. Civ. P. 26 (a) (2), which disclosures included the June 22, 2009 expert report of Robert Biggerstaff; the March 22, 2012 Declaration of Robert Biggerstaff with the names and addresses of recipients of the fax transmitted advertisement issued on behalf of DRA as well as other exhibits, attached as Exhibit A to the March 22nd Declaration.  See Self-Executing Disclosures, attached hereto as Exhibit I.

In his March 22, 2012 Declaration, Mr. Biggerstaff attested that B2B, the vendor used by DRA, had sent 44,832 successful fax transmissions to 29,113 unique fax numbers.  A true and correct copy of the March 22, 2012 Declaration of Robert Biggerstaff and the appended Exhibit "A" to the Declaration is attached hereto as Exhibit "H".  In his March 22, 2012 Declaration, Biggerstaff stated that he reviewed the computer records of the vendor used by DRA to send the faxes, B2B, to identify the names and addresses corresponding to the fax numbers identified in his June 22, 2009 expert report and to whom fax transmissions were successfully sent. Biggerstaff attested to having compiled a list of the names and addresses of the recipients in the appended Exhibit "A".  See Exhibit "H".  See also Exhibit I to City Select's Statement of Undisputed Material Facts in it's motion for summary judgment in the underlying action. Case 1:11-cv-002658-JBS-KMW, Document 141-2.  The recipients of the fax transmissions compiled by Biggerstaff in his Declaration were business organizations, not individuals. See Exhibit "H".

On December 20, 2013, the district court granted City Select's motion for class certification and designated City Select Auto Sales, Inc. as the class representative.  See Complaint, Exhibit A.  The court's order designated the class claims to include 1) whether the Defendants violated the TCPA by sending the advertisements without the permission of the recipients; 2) whether the Plaintiff and the class members were entitled to statutory damages under the TCPA; 3) whether the Defendants' actions were willful and knowing under the TCPA and, if

so, whether the Court should treble the statutory damages; 4) whether the court should enjoin Defendants from future TCPA violations.

On November 14, 2014, City Select filed its Motion for Summary Judgment and Memorandum of Law in the City Select action (Document No. 141 and 141-1). The March 22, 2012 Declaration of Robert Biggerstaff and the appended Exhibit "A" was submitted to the court in the City Select action as Exhibit "H" to City Select's motion for summary judgment.   Case No. 1:11-cv-02658-JBS-KMW, Document 141-11. As part of its motion for summary judgment in the City Select action, City Select submitted the expert report of Robert Biggerstaff as Exhibit G to its motion.  Case No. 1:11-cv-02658-JBS-KMW, Document 141-10.

On March 27, 2015, the Hon. Jerome Simandle entered an Order and Judgment granting City Select's motion for summary judgment as to the City Select class claims under the TCPA as to David Randall Associates, Inc. and denying City Select's motion for summary judgment against Mr. Miley.   The court entered judgment in favor of the class against David Randall Associates in the amount of $22,405,000.00, excluding opt-outs.  (1:11-cv-02658-JBS, Document No. 152). See Order and Judgment, No. 11-2658, attached as Exhibit C to Complaint.

The court found there were 44,832 transmissions of a fax sent to 29,113 fax numbers. See  Opinion, Hon. Jerome B. Simandle, March 27, 2015, pp. 42-43, 55-56, attached as Exhibit C to Complaint.  After excluding those persons who opted out of the class, the court multiplied the number of faxes sent by the statutory damage

11

available under the TCPA of $500.00 per fax and entered judgment in the amount of $22,405,000.  Id. at pp. 55-56.

The court found that on March 28, 2006, Clemmer sent B2B a check in connection with the campaign for 12,000 faxes with a direction that the faxes be sent on the morning of March 29, 2006.  Court Opinion, pp. 10-11. Following the first "blast" fax, DRA received multiple complaints concerning the unsolicited nature of the advertisements.  Court Opinion, p. 11.  These complaints included that the hotline to opt out was ineffective or unavailable and some suggested that the advertisement violated applicable law.  Id.  The court found that despite these complaints, Clemmer wrote to B2B on March 31, 2006 and stated that DRA "would like to do another fax marketing blitz" during the morning of an upcoming raining day and that it wanted to send another 12,000 transmissions of the ad to the targeted areas.  Court Opinion, p. 11.  Clemmer faxed a check to B2B for the second fax blitz.  Court Opinion, p. 12.

Clemmer informed B2B that some recipients had threatened legal action and/or threatened to contact the Federal Communications Commission, that some recipients notified her of the legal requirement of a toll free opt-out number and that the existing hotline number was not available.  Court Opinion, p. 12. On April 12, 2006, Clemmer requested a third set of transmissions consisting of 18,000 faxes and provided numbers to be removed from the distribution list.  Court Opinion, p. 12.  Clemmer sent B2B payment in connection with DRA's campaign of another 18,000 faxes with instructions to send on the morning of April 14, 2006.  Id.

Following the third blitz, Clemmer advised B2B on April 17, 2006 of requests to have fax numbers removed from the list.  <u>Court Opinion</u>, p. 13. Despite the continuing complaints, on May 12, 2006, DRA authorized a fourth fax blast and requested that 12,000 faxes be sent to the original area targeted in March<u>.  Court Opinion</u>, p. 13.  Clemmer forwarded payment to B2B with a direction that the fax blast be completed during the morning of May 15, 2006.  <u>Court Opinion</u>, p. 13. DRA never possessed a list of the intended fax recipients nor had requested such a list. There was no consent from the recipients prior to DRA contracting with B2B for the fax advertising campaign.  <u>Court Opinion</u>, p. 28.   The court found that DRA were "senders" of the fax advertisements based on the Biggerstaff report for purposes of establishing TCPA liability.  <u>Court Opinion</u>, pp. 37, 54.

## III.   <u>ARGUMENT</u>

### A.   <u>Standard Governing Summary Judgment and Construction of Insurance Policy</u>

Under Federal Rule of Civil Procedure 56 (a), a party is entitled to summary judgment where the movant shows that there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56 (c). Facts that could alter the outcome are material. <u>Ideal Dairy Farms, Inc. v. John Labatt, Ltd</u>., 90 F. 3d 737, 743 (3d Cir. 1996).  The movant bears the burden of demonstrating the lack of a dispute as to a material fact by citing to specific portions of the record which demonstrate entitlement to judgment.  <u>Celotex Corp. v. Catrett,</u> 477 U.S. 317, 323 (1986).  The court must consider the evidence proffered by the movant and draw all reasonable inferences in favor of the non-movant.  <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 255 (1986).

Under Pennsylvania law, the interpretation of an insurance contract is a matter of law for the court to decide. Allstate Prop. & Cas. Ins. Co. v. Squires, 667 F. 3d 388, 391 (3d Cir. 2012). When the language of an insurance contract is clear and unambiguous, a court is required to enforce that language. Med. Protective Co. v. Watkins, 198 F. 3d 100, 103 (3d Cir. 1999). The goal of that task is to construe contractual intent as manifested by the language of the policy. Madison Construction Co. v. Harleysville Mut. Ins. Co., 735 A. 2d 100, 108 (Pa. 1999). Words of common usage in an insurance policy are to be interpreted according to their natural, plain and ordinary sense. Id. Where the plain meaning of the policy is clear, the court is required to give effect to that language. Id.; Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 422 F. Supp. 2d 488 (E.D. Pa. 2006). Wherever possible, policies should be read to avoid creating ambiguity. State Farm Fire & Cas. Co. v. MacDonald, 850 A. 2d 707, 71-11 (Pa. Super. 2004), *app. denied*, 863 A. 2d 1148 (Pa. 2004). Contract terms are ambiguous only if they are reasonably susceptible of different constructions and are capable of being understood in more than one sense. Madison Construction, 735 A. 2d at 106.

### B. Standard Governing Duty to Indemnify

An insurer's duty to indemnify is separate from its duty to defend; however, both flow from a determination that the complaint triggers coverage. Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am., 581 F. Supp. 2d 677, 694 (W.D. Pa. 2008) (collecting cases). An insurer's duty to defend and potential duty to indemnify is determined by the allegations of the complaint. Id. An insurer has a

duty to defend when the allegations in the complaint could potentially fall within the scope of coverage. Id. If there is no duty to defend, there is correspondingly no duty of indemnity. Westfield Ins. Co. v. Bellevue Holding Co., 856 F. Supp. 2d 683, 702 (E.D. Pa. 2012). An insurer will have a duty to indemnify only where the insured is held liable for a claim that is actually covered by the policy. Id. citing General Accident Ins. Co. of Am. v. Allen, 692 A. 2d 1089, 1095 (3d Cir. 1997); Whole Enchilada, Inc. v. Travelers Property Cas. Co. of Am., 581 F. Supp. 2d 677, 694-95 (W.D. Pa. 2008).

## C. Commercial General Liability Insurance Policy Does Not Cover Liability Under TCPA For Sending Of Unsolicited Faxes

The Third Circuit, applying Pennsylvania law, has held that the commercial general liability ("CGL") insurance policy does not afford coverage for an insured's violation of the Telephone Consumer Protection Act's ("TCPA") prohibition of the unsolicited transmission of facsimile advertisements[1]. Nationwide Mut. Ins. Co. v. David Randall Associates, Inc., 551 Fed. Appx. 638 (3d Cir. 1994); Auto-Owners Ins. Co. v. Stevens & Ricci, Inc., 835 F. 3d 388 (3d Cir. 2016). In David Randall Associates, the court held that an insured's liability for sending unwanted fax advertisements was not accidental conduct and that the ensuing use of the recipient

---

[1] The TCPA prohibits the transmission of a facsimile advertisement absent the recipient's prior express invitation or permission. See 47 U.S.C. §227(a)(4), (b)(1)(C)(i)-(iii). The ban does not apply if the sender has an "established business relationship" with the recipient and the recipient voluntarily publicized its facsimile number for public distribution. 47 U.S.C. §227 (b)(1)(C)(i)(ii). City Select Auto Sales, Inc. v. David Randall Associates, Inc., 296 F.R.D. 299, 315 (D. N.J. 2013). The TCPA does not require proof of the receipt of an unsolicited fax. Id. at 309, citing CE Design Ltd. v. Cy's Crabhouse N., Inc., 259 F.R.D. 135, 142 (N.D. Ill. 2009).

fax machine's paper, toner ink and time, was a reasonable and foreseeable result of such conduct.  For this reason, liability cannot satisfy the CGL policy's "occurrence"[2] requirement under Coverage A which demands proof of a fortuitous event.  David Randall Associates, *supra* at *641 (collecting cases).[3]  The court further held that it was immaterial that the insured might not have intended to violate the TCPA where the intent to send the faxes was apparent from the pleadings.  Id.[4]

In Stevens & Ricci, the Third Circuit addressed the separate component of "advertising injury" under Coverage B of the CGL policy which includes the offense of an "oral or written publication of material that violates a person's right of privacy".  Stevens & Ricci, *supra* at 407.  The court held that this contract term applies to the protection of a privacy interest in protecting confidential information

---

[2] An "occurrence" is defined by the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions".  The CGL Policy also does not cover "property damage" expected or intended from the standpoint of the insured.  Id.

[3] The court in David Randall Associates applied Pennsylvania law to the insurance coverage inquiry as it was the location of the insured, its broker and the insurer, Harleysville Mutual Insurance Company and is the location where the policy was delivered to David Randall Associates.  Nationwide Mut. Ins. Co. v. David Randall Associates, 2013 WL 271816 at footnote 1 (E.D. Pa. Jan. 24, 2013).  David Randall Associates was a Pennsylvania corporation located in Harleysville, Pennsylvania.  Deposition, Miley, pp. 9-11, Exhibit D.  Randall's broker, Lechner & Stauffer was located in Pennsburg, Pennsylvania.  Dep. Carol Kress, p. 6, Exhibit G.  At the time of the issuance of the policy, Harleysville Mutual Insurance Company was organized under the laws of the Commonwealth of Pennsylvania and had its principal place of business located in Harleysville, Pennsylvania.  Affidavit, Mark Hartman, Exhibit A.  The policy was underwritten and issued out of Harleysville Mutual's office located in Harleysville, Pennsylvania.  As all events pertinent to the insurance contract took place between Pennsylvania residents in Pennsylvania, Pennsylvania law applies to the contract.  Hammersmith v. TIG Ins. Co., 480 F. 3d 220 (3d Cir. 2007).

[4]  It is Nationwide's understanding that City Select does not dispute the fact that TCPA claims do not implicate "property damage" liability coverage of the CGL policy based on the Third Circuit decisions in David Randall Associates, *supra* and Melrose Hotel Company v. St. Paul Fire and Marine Ins. Co., 503 F. 3d 339 (3d Cir. 2007) and confines its contentions to the "personal and advertising injury" of Coverage B.

from disclosure; it does not encompass the separate, legally recognized privacy interest in seclusion; i.e., the right to be left alone. <u>Id.</u> at 408. The Third Circuit held that the TCPA protects only the seclusion interest by shielding people from unsolicited fax messages; whether the content of the message includes private information is immaterial to TCPA liability. <u>Id.</u>

The Third Circuit's decision in <u>Stevens & Ricci</u> is outcome determinative. The court emphasized that it must be the "material" itself, rather than its mere publication, which violates the person's right of privacy. <u>Id.</u> at 409. The clause, "that violates a person's right of privacy", modifies the term "material". <u>Id.</u> "That would take place only if the material contained confidential information and violated the victim's right to secrecy". <u>Id.</u>

The Third Circuit noted that "numerous state and federal courts have considered whether violations of the TCPA are covered by insurance policies that include similar or identical language to that at issue". <u>Id.</u>, citing <u>Telecommunications Network Design v. Brethren Mut. Ins. Co.</u>, 5 A. 3d 331, 335-6 (Pa. Super. 2010), appeal denied, 5 A. 3d 331 (Pa. 2011). In <u>Telecommunications</u>, an office supply company sought a declaration that a CGL insurer was obligated to afford coverage for a TCPA lawsuit under the "advertising injury" clause which includes an "oral or written publication of material that violates a person's right of privacy". <u>Id.</u> at 335. The Pennsylvania Superior Court, surveying the law nationwide, held that the policy term "privacy" in the context of a publication is

confined to a secrecy interest in the content of the message publicized and not the intrusive nature of how it was conveyed.  Id. at 337.

The Superior Court noted that the "advertising injury" definition referenced other communications actionable for their content, including, e.g., libel or slander, the misappropriation of advertising ideas or the infringement of copyright or slogan. Id.  The Superior Court held that the TCPA complaint was not premised on the content of the fax, but on the cost caused by the depletion of the class member's resources that resulted from the sending of the unauthorized faxes and that the TCPA claim addresses only the right of seclusion, to be free of the annoyance of an unsolicited fax.  Id.  As a result, the insured was not entitled to a defense or potential indemnification for its liability under the TCPA.  Id.

Courts within this jurisdiction have uniformly held that Coverage B of the CGL policy does not extend to TCPA liability. One Beacon Ins. Co. v. Urban Outfitters, 21 F. Supp. 3d 426, 439 (E.D. Pa. 2014) (privacy right protected by CGL policy is the right to secrecy); Melrose Hotel Co. v. St. Paul and Marine Ins. Co., 432 F. Supp. 488, 502 (E.D. Pa. 2006) ("privacy" is confined to matters of secrecy); Advent Home Mortgage Corp. v. Hartford Cas. Ins. Co., No. 06-1582, 2006 WL 7121792 at * 5 (E.D. Pa. Aug. 14, 2006) (Hart, M.J.) (same); Maryland Cas. Co. v. Express Products, No. 09-857, 2011 WL 4402275 at *16-17 (E.D. Pa. Sept. 22, 2011) (Tucker, J.) (same); Selective Ins. Co. of Am. v. J. Reckner Assoc., Inc., No. 2:18-cv-04450-JDW, 2020 WL 1531874 at * 3 (E.D. Pa. Mar. 31, 2020) (Wolson, J.)(same);

Hartford Fire Ins. Co. v. Flagstaff Industries, Corp., 2012 WL 1669845 at *7 (N.D. Ohio) (same) (applying Pennsylvania law).

As in these cases, the policy issued to David Randall Associates includes within the definition of a "personal and advertising injury" the same offense considered in Telecommunications of an "oral or written publication, in any manner, *of material* that violates a person's right of privacy". See CGL Policy Definitions, p. 14 of 15, Exhibit H to Complaint, Document 1-8, Page 69 of 156 (emphasis added). It is the material itself that must violate the privacy interest, not simply the sending of a communication.

Under Pennsylvania law, an action for invasion of privacy is comprised of four torts: (1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life or the right to secrecy; and (4) publicity placing a person in a false light, including intrusion upon seclusion and publicity given to private life. Auto-Owners Ins. Co. v. Stevens & Ricci, Inc., No. 12-7228, 2015 WL 1456085 at *8 (E.D. Pa. Mar. 31, 2015) citing Marks v. Bell Tel. Co. of Pa, 331 A. 2d 424, 430 (Pa. 1975).   With regard to the intrusion tort, the invasion may be: 1) by physical intrusion into a place where the plaintiff has secluded himself; 2) by use of defendant's senses to oversee or overhear plaintiff's private affairs; of 3) some other form of investigation or examination into plaintiff's private concerns.   Doe v. Hospitality of University of Pennsylvania, ___ F. Supp. 3d ____, 2021 WL 2661501 at *11-12 (E.D. Pa. June 29, 2021).

In a claim of publicity given to private life, the matter which is publicized are private facts which are of no legitimate concern to the public and which publication is highly offensive.  Boring v. Google, Inc., 362 Fed. Appx. 273, 280 (3d Cir. 2010). In a false light publication, liability is imposed on a person who publishes material that is not true and which publication is highly offensive to a reasonable person. Graboff v. Colleran Firm, 744 F. 3d 128, 136 (3d Cir. 2014).  A defendant violates a right of publicity by appropriating the plaintiff's name or likeness and using it to commercial advantage.  Rose, *supra* at *3.

An intrusion upon seclusion claim involves proof of an intentional intrusion upon the seclusion of another which is highly offensive to a reasonable person. Boring, *supra* at 280.  This may occur by a physical intrusion into a place where the plaintiff has secluded themselves; the use of the defendant's senses to oversee or overhear the plaintiff's private affairs; or some of other form of investigation into the plaintiff's private concerns.  Borse v. Piece Goods Shop, Inc., 963 F. 2d 611, 621 (3d Cir. 1992).  Publication is not an element of an intrusion upon seclusion claim. Boring, *supra* at 279; Borse, *supra* ("unlike the other forms of tortious invasion of privacy, an action based on intrusion upon seclusion does not require publication as an element of the tort"); Doe v. Hospitality of University of Pennsylvania, *supra*.

As noted in Advent, *supra* the insuring agreement expressly requires a "publication" that violates a right of privacy; "in a seclusion situation, publication is irrelevant".  Advent, *supra* at *5.   For this reason, the "personal and advertising injury" definition does not encompass TCPA-based liability. Id.

As respects the other publication-type torts, the policy definition encompasses an "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services"; "the use of another's advertising idea in your "advertisement""; or infringing upon another's copyright, trade dress or slogan in your "advertisement". An "advertisement" is a "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters".  CGL Policy Definitions, p. 12 of 15, Exhibit H to Complaint, Document 1-8, Page 67 of 156.  These publication offenses depend on the content of the material, e.g., whether it is defamatory, misappropriates an advertising concept or infringes on intellectual property rights.  None of the publication-based offenses identified in the "personal and advertising injury offenses" can be divorced from the content of the material.

Under Stevens & Ricci and Telecommunications, the TCPA liability in the City Select case is not covered under Coverage B as a matter of law as it is based on the sending of unsolicited facsimiles and not on the content of the message, i.e., the material published.  As in those cases, the policy issued to David Randall Associates defined the covered offenses to include "oral or written publication of material that violates a person's right of privacy" as well as publications of material that are defamatory, advertisements that misappropriate advertising ideas, or those that infringe on copyrights or slogans--all content based.

21

It is believed that City Select seeks to distinguish these precedents based on the fact that the Harleysville policy definition also encompasses other non-publication type torts, such as "false arrest, detention or imprisonment; malicious prosecution; wrongful eviction, wrongful entry or invasion of the right of private occupancy of a room, dwelling or premises. Document No. 1-8, p. 69. The false arrest, imprisonment, malicious prosecution and wrongful eviction torts are not based on the sending or the content of any communication, but are instead based on certain wrongful actions, such as unjustifiably detaining a person, wrongfully suing someone or evicting them from their premises. These offenses are not relevant in understanding the meaning of "privacy" in the context of an oral or written publication of material and do not give any credence to the contention that a privacy interest in seclusion is covered by the policy. See Advent, *supra* at *5 (citing same policy language).

Additionally, the Pennsylvania Superior Court in Telecommunications rejected those decisions from other jurisdictions that viewed the "privacy" interest as encompassing both the right to secrecy as well as the right of seclusion. Telecommunications, *supra* at 335, citing e.g., Park University Enterprises, Inc. v. American Cas. Co. of Reading, Pa, 442 F. 3d 1239, 1248 (10th Cir. 2006) (applying Kansas law); Valley Forge Ins. Co. v. Swiderski Electronics, Inc., 860 N.E. 2d 307 (Ill. 2006) and as did the Seventh Circuit which rejected the conflating of secrecy with seclusion when examining the policy language addressing publication of material that violates privacy interests. American States Ins. Co. v. Capital

Associates of Jackson County, 392 F. 3d 939, 943 (7th Cir. 2004) (applying Illinois law).  While the Illinois Supreme Court in Valley Forge disagreed with the Seventh Circuit's decision, the Pennsylvania Superior Court acknowledged the split of authority and sided with those courts which have found that the policy does not cover intrusion upon seclusion.  Telecommunications, *supra* at 335-336.

City Select will likely suggest that the insurance policy under consideration by the Superior Court in Telecommunications did not include the offenses of false arrest, false imprisonment, malicious prosecution and that for this reason, the court's decision is distinguishable.  However, the policy under consideration in Telecommunications defined "personal injury" to also include false imprisonment, malicious prosecution, wrongful eviction, defamation and disparagement. Telecommunications Network Design, Inc. v. Brethren Mut. Ins. Co., 83 Pa. D. & C. 4th 265, 269, footnote 9 (C.P. Phila 2007).  The policy's "advertising injury" coverage included enumerated acts of defamation, disparagement, misappropriation, copyright and title infringement.  Id. at footnote 11.

There is no reason to infer from the Telecommunications decision that there is a basis for coverage under its holding simply because the Harleysville policy combined these offenses into a single "personal and advertising injury" definition instead of breaking the offenses into the categories of "personal injury" and "advertising injury".  Express Products, *supra* at *16 (applying Telecommunications

to same policy definition of "personal and advertising injury"[5]); <u>Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.</u>, 2015 WL 1456085 at *2 (E.D. Pa. Mar. 31, 2015) ("personal injury" definition included false arrest, detention or imprisonment, malicious prosecution, and wrongful eviction).   Accordingly, under the <u>Stevens & Ricci</u> and <u>Telecommunications</u> decisions, summary judgment is warranted on Nationwide's claim that the coverage grant of the insurance policy affords no coverage for the judgment secured against David Randall Associates.

### D.   Class Members Damages Are Not Based On A Covered Personal and Advertising Injury Offense

The TCPA conditions liability on the sending of an unsolicited fax advertisement irrespective of its actual receipt, viewing or printing of the fax.  See e.g., <u>City Select Auto Sales, Inc. v. David Randall Assoc., Inc.</u>, 296 F.R.D. 299, 309 (D. N.J. 2013); <u>Hinman v. M and M Rental Center, Inc.</u>, 596 F. Supp. 2d 1152, 1159 (N.D. Ill. 2009); <u>Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, DDS, PA,</u> 781 F. 3d 1245 (11th Cir. 2015) (question of whether a plaintiff actually received a facsimile is irrelevant to liability under the TCPA).  <u>A Fast Sign Co. v. Am. Home Servs., Inc.</u>, 734 S.E. 2d 31, 33 (Ga. 2012) (proof of receipt unnecessary to establish cause of action). While Coverage B does not extend to the interest in seclusion for those reasons discussed above, the establishment of TCPA liability in the City Select case is not premised on an actual invasion of privacy, including the interest in seclusion; rather, it is predicated simply on proof of the sending of a fax

---

[5]  <u>See</u> Maryland Cas. Co. CGL Policy, Case 2:09-cv-00857-PBT, <u>Document 1-1</u>, Page 79 of 99; <u>Document 1-2</u>, Page 49 of 101.  <u>See also</u> Cumberland policy, Case 2:08-cv-02909-PBT, <u>Document 1-1</u>, Page 5 of 41.   The identified pages of said policies are attached as Exhibit L.

transmission.  City Select, *supra*.  The district court's judgment in City Select was based exclusively on the sending of the facsimiles which triggered liability under the TCPA.  No proofs were submitted regarding anyone's receipt of the fax or its viewing or that they regarded the fax as an intrusion on their privacy.

Additionally, based on the proofs submitted in the City Select case, there were no damages based on an invasion of privacy of any "person", as the fax advertisements *were sent to businesses not individuals*.  City Select's expert, Robert Biggerstaff, proffered his Declaration in support of City Select's motion for summary judgment, that he analyzed the electronic records of the fax vendor, B2B and the logs identifying 44,832 successful and error-free transmissions of faxes to 29,113 unique fax numbers and based on that review, compiled the list of names and addresses for the fax transmissions sent on behalf of David Randall Associates. See Declaration, Robert Biggerstaff, March 22, 2012, attached hereto as Exhibit H. Exhibit A to the Biggerstaff Declaration identified each of the names and addresses of the recipients of the faxes.  See Exhibit H.  The faxes were sent to business organizations.

A corporation, partnership or unincorporated association has no right to privacy. Teri Woods Pub., LLC v. Williams, 2013 WL 1500880 (E.D. Pa. Apr. 12, 2013), citing Restatement (2d) of Torts, §652 (1977); Arnold v. Pa, DOT, 477 F. 3d 105, 111 (3d Cir. 2007) (corporations can claim no equality with individuals in the enjoyment of a right to privacy); Franklin Prescriptions, Inc. v. New York Times Co., 2001 WL 936690 (E.D. Pa. Aug. 16, 2001); Gillon v. Bernstein, 218 F. Supp. 3d

285, 304 (D. N.J. 2016) (corporation has no personal right of privacy). Only an individual can experience an invasion of privacy.  Id.

For this reason, the damages on which the district court entered judgment in favor of City Select were not predicated on a "oral or written publication, in any manner, of material that violates a **person's** right of privacy", because the faxes were sent to businesses.  See Nationwide Mut. Ins. Co. v. Gum Tree Property Management, LLC, 597 Fed. App. 241, 248 (5th Cir. 2015) (violation of person's right of privacy under CGL policy does not extend to business entities, only natural persons) (applying Mississippi law); Clark Mfg. Inc. v. Northfield Ins. Co., 187 F. 3d 646 at *4  (9th Cir. 1999) (same);  S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co., 186 Cal. App. 4th 383, (Cal. App. 6th Dist. 2010) (CGL policy reference to a "person's right to privacy" does not include business organizations);  Joe Ervin's Fitness Clubs, Inc. v. United National Ins. Co., 2007 WL 9698317 at *4-5 (S.D. Fla. July 25, 2007) (no coverage for invasion of privacy of  Sportsfield Specialties, Inc. v. Twin City Fire Ins. Co., 984 N.Y.S. 2d 447, 450 (N.Y. App. Div. 2d Div. 2014) (corporation is not a person for purposes of publication that violates a person's right of privacy under CGL policy).

The Harleysville policy definition of "personal and advertising injury" encompasses an invasion of privacy experienced by a person, not an organization. By contrast, it extends coverage for libel or disparagement sustained by either a person or an organization.  See Policy Definition No. 14, Complaint, Exhibit H, Document 1-8, Page 69.  Likewise, the policy distinguishes between "persons" and

"organizations" in other sections. <u>See</u> Policy, Section IV. 3. Legal Action Against Us (A person *or* organization may sue us …), <u>Document No. 1-8</u>, Page 66. As the above cases discuss, the distinction between persons or organizations as used in the policy means that a person in the context of an invasion of privacy is a natural person and not a corporate or business entity.

Because the policy limits coverage for invasion of privacy sustained by individuals, there is no arguable basis for indemnity of the class judgment secured by City Select on behalf of the thousands of businesses to which faxes were sent. The damages recovered on behalf of the class were statutory damages under the TCPA, not damages for an actual injury sustained by any class member. <u>Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of America</u>, 581 F. Supp. 2d 677, 703 (W.D. Pa. 2008) (discussing statutory damages under FACTA). For this reason, for coverage to be found, there must be proof of actual proof of damages that meets the definition of either "property damage"[6], "bodily injury" or "personal and advertising injury". Because the invasion of privacy offense is limited to persons, no coverage is afforded for liability to the class representative or the constituent class members which are business organizations.

### E.   <u>Unsolicited Fax Exclusion Applies to City Select Claim</u>

While liability under the TCPA is not encompassed by Coverage B as a matter of law, it is also removed from coverage under the Exclusion for Unsolicited

---

[6] As discussed *supra*, The Third Circuit's decisions in <u>David Randall Associates</u>, *supra* and <u>Melrose Hotel Co.</u>, dispose of any suggestion that there could be "property damage" liability coverage. While the Third Circuit decision in <u>Stevens & Ricci</u> likewise forecloses recovery under the "personal and advertising injury" coverage, it is believed that City Select seeks to distinguish that holding.

Faxes, Telephone Calls and Emails.   See Endorsement CG-7248, CGL Policy,

Document No. 1-8, p. 86 of 156.   The endorsement adds to the exclusions under

Coverage B, the following:

This insurance does not apply to:

**o.   Unsolicited faxes, telephone calls and emails**

"Personal and advertising injury" arising from unsolicited faxes …
which are subject to and prohibited by any state or federal law, rule or
regulation governing the abuses associated with unsolicited faxes …
and other similar acts and practices including but not limited to:

a.      the Federal Telephone Consumer Protection Act;

The exclusion unambiguously encompasses City Select's TCPA claim against

David Randall Associates for the sending of unsolicited faxes.   See e.g., Emcasco

Ins. Co. v. CE Design, Ltd., 784 F. 3d 1371, 1383 (10th Cir. 2015); American Cas. Co.

of Reading, Pa. v. Superior Pharmacy, LLC, 86 F. Supp. 3d 1307, 1312 (M.D. Fla.

2015).  City Select posits that the exclusion should be read out of the policy as it was

first included on a policy renewal[7] and contends that the insured did not know of its

inclusion or understand or assent to the modification of coverage.   However, the

renewal policy contained an "Important Notice to Policyholders" which informed

David  Randall  Associates  that:  "your  renewal  policy  has  a  new  form  titled

Exclusion-Unsolicited  Faxes,  Telephone  Calls  and  Emails  attached  to  it.    This

represents a reduction in coverage".   See Form ST-7511 (Ed. 12-04), Document 1-8,

---

[7]  The Commercial policy was renewed for the term July 1, 2005 through July 1, 2006 and
first contained Endorsement CG 7248 (12 04), captioned on the Declarations as Exclusion-
Unsolicited  Faxes,  Telephone  Calls  and  Emails.    The  Declarations  identify  the
Endorsement with an asterisk which "indicates a new or replacement form".   See Policy
Declarations, Document 1-8, Page 12 of 156.

Page 46 of 156. The notice informs the insured that the new form excludes "personal and advertising injury arising from unsolicited faxes" which are subject to any state or federal law including the Federal Telephone Consumer Protection Act. Id.

While City Select argues that Nationwide should be barred from relying on the exclusion absent proof that DRA was actually aware of and understood the significance of the exclusionary language[8], City Select does not have standing to advance this contention as it is not the policyholder and, therefore, it has no cognizable expectations regarding coverage. Additionally, the reasonable expectations doctrine applies to non-commercial insureds, not a commercial entity represented by an insurance broker.

A court is to construe an insurance policy including its exclusions to coverage in accordance with its plain meaning. Madison Construction Co. v. Harleysville Mut. Ins. Co., 735 A. 2d 100 (Pa. 1999); Kurach v. Truck Ins. Exchange, 235 A. 3d 1106, 1116 (Pa. 2020). An exception to this precept exists to protect the "reasonable expectations" of a policyholder "in very limited circumstances to protect non-commercial insureds from policy terms not readily apparent and from insurer deception". Madison Construction, supra at footnote 8; Canal Ins. Co. v. Lloyd's London, 435 F. 3d 431, 440 (3d Cir. 2006), cited in Vinart Management Company, Inc. v. Employers Mut. Cas. Co., No. 20-2954, 2021 WL 3033819 at *4 (E.D. Pa. July 19, 2021). Pennsylvania courts have declined to apply the reasonable expectations

---

[8] See discussion infra at pp. 32-37 regarding the insurer's transmission and receipt of the renewal policy by the broker.

doctrine where the commercial insured used a broker to purchase insurance for its business. <u>Vinart</u>, *supra*, citing <u>MDL Capital Management, Inc. v. Federal Ins. Co.</u>, No. 05-cv-1396, 2006 WL 2974165 at *9 (W.D. Pa. Oct. 16, 2006), aff'd in part, rev'd. in part on other grounds, 274 Fed. Appx. 169 (3d Cir. Apr. 2, 2008). Cf. <u>Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.</u>, 581 F. Supp. 2d 677, 693 (W.D. Pa. 2008) (while credit must be given to reasonable expectations of insured, the insured is a corporation which purchased policies through a broker). Additionally, the reasonable expectations doctrine has been applied only when a non-commercial insured alleges misrepresentation on the part of the insurer and *does not exist for the benefit of a non-insured who cannot speak to the expectations of the policyholder.* <u>Yakitori Boy, Inc. v. Starr Indemnity & Liability Company</u>, No. 18-4094, 2019 WL 2724039 at *6 (E.D. Pa. June 28, 2019) (emphasis added).

City Select presumably relies on <u>Moessner</u>[9], *supra* for the proposition that the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy. <u>Moessner</u>, 121 F. 3d at 904. See also <u>Bensalem Township v. International Surplus Lines Ins. Co.</u>, 38 F. 3d 1303,

---

[9] The Third Circuit predicted that Pennsylvania courts would apply the doctrine to commercial insureds. <u>Reliance Ins. Co. v. Moessner</u>, 121 F. 3d 895, 906 (3d Cir. 1997) cited in <u>Foremost Ins. Agency v. Himmel</u>, 2012 WL 13001585 (M.D. Pa. June 1, 2012). However, the <u>Moessner</u> decision pre-dates the Pennsylvania Supreme Court's decision in <u>Madison Construction</u>, *supra*. As observed by a Pennsylvania trial court, all Pennsylvania published appellate decisions applying the reasonable expectations doctrine have involved individual insureds. <u>TJS Brokerage & Co. v. Hartford Cas. Ins. Co.</u>, 45 Pa. D. & C. 4th 1, footnote 18, 2000 WL 1060645 (C.P. Phila. Apr. 24, 2000). See also <u>Millers Capital Ins. Co. v. Gambone Bros. Development Co., Inc.</u>, 941 A. 2d 706, footnote 10 (Pa. Super. 2007) (leaving issue of whether doctrine can be invoked by a sophisticated commercial insured to another day).

1308 (3d Cir. 1994).   While these decisions pre-date <u>Madison Construction</u> and are founded on an earlier prediction that the doctrine would apply to commercial insureds, in each instance, the claimant advancing their reasonable expectation to coverage was the policyholder, and not a third-party plaintiff who is a stranger to the insurance contract.   No decision stands for the proposition that a tort claimant can invoke reasonable expectations to override the unambiguous language of an insurance policy.

The reasonable expectations construct is a form of equitable estoppel to preclude a party from depriving another of a reasonable expectation when the party inducing the expectation knew or should have known that the other would rely to their detriment on that conduct.   <u>West American Ins. Co. v. Park</u>, 933 F. 2d 1236, 1239 (3d Cir. 1991), citing, <u>Straup v. Times Herald</u>, 423 A. 2d 713 (Pa. Super. 1980). As discussed in <u>Park</u>, "<u>Collister</u> and subsequent insurance cases expand traditional notions of equitable estoppel so that the insurer is bound not only by the expectations that it creates, but also by any other reasonable expectation *of the insured*".   <u>Id</u>. citing <u>Collister v. Nationwide Life Ins. Co.</u>, 388 A. 2d 1346, 1353 (Pa. 1978); <u>Bensalem Twp.</u>, 38 F. 3d at 1311.

Equitable estoppel can only be invoked by the party who has acted in ignorance of the true state of the facts and who was without suitable means of informing themselves of their existence.   <u>Novelty Knitting Mills, Inc. v. Siskind</u>, 457 A. 2d 502, 503 (Pa. 1983), citing <u>Com ex. rel. Gonzalez v. Andreas</u>, 369 A. 2d 416 (Pa. Super. 1976); <u>Biofsen v. Cutaiar</u>, 333 A. 2d 841, 844 (Pa. 1975).   City Select is

not the insured, it has no reasonable expectation to coverage and cannot invoke the concept to override the exclusion because only the insured can assert that it was misled into believing that coverage existed irrespective of the policy exclusion.  See Yakitori Boy, *supra.*   The insured has advanced no such contention.  Indeed, the insured, when represented by counsel in the initial declaratory judgment action affirmatively conceded the absence of "personal and advertising injury" coverage. Therefore, the reasonable expectations doctrine is unavailable to City Select to override the plain and unambiguous policy exclusion which removes all coverage for TCPA liability and other like claims.

F.  **Notice of Policy Exclusion to Insured's Commercial Agent Suffices to Establish Awareness of TCPA Exclusion**

While the inapplicability of the reasonable expectations doctrine obviates any need to examine the insured's awareness of the policy exclusion on a renewal, the insured, though its insurance broker, was apprised of the amendatory endorsement which expressly excluded any coverage for TCPA claims.

Where a policyholder desires to have his property insured and applies not to any particular company or its known agent, but to an insurance broker and relies on the broker to select the insurer, a long line of cases has declared the broker to be the agent of the insured, not of the insurer.   Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co., 641 F. Supp. 297, 303 (E.D. Pa. 1986), citing Taylor v. Crowe, 282 A. 2d 682 (Pa. 1971); Transguard Ins. Co. of Am., Inc. v. Hinchey, 464 F. Supp. 2d 425, 431 (M.D. Pa. 2006).   Knowledge of the insured's broker is imputed to the principal, the insured.  The Brickman Group, Ltd. v. CGU

<u>Ins. Co.</u>, 865 A. 2d 918 (Pa. Super. 2004).   As discussed below, the renewal policy for the 2005-2006 term was issued to David Randall Associates' agent, such that knowledge of the policy contents and the subject exclusion is imputed to David Randall Associates.

The principal of David Randall Associates,[10] Raymond Miley testified that "when it came to insurance, we had agents and they would … tell me what I needed to do to make things correct" and that "the agent would review our business and tell us what we needed to meet the criteria for protection".   <u>Dep. Miley</u>, pp. 9, 16-19, attached hereto as Exhibit "D".   Miley testified that he remembered the names of John and Dave Kauffman from the Lechner & Stauffer insurance agency that would meet with him and his administrative staff on a periodic basis.   <u>Id</u>. at p. 22.   He testified that he could not recall how it came to be that Harleysville Insurance was selected to insure David Randall Associates.   <u>Id</u>. at pp. 23-24.   He recalled that the "agency would review our records and our sales and say here's your exposure, this is what you need."   <u>Id</u>. at p. 32.    Miley had no recollection about the Harleysville 2005-2006 insurance policy.   <u>Id</u>. at pp. 28-30, 34.   He testified that he had no recollection of any insurance policy issued by Harleysville.   <u>Id</u>. at p. 30.   He testified that the policies were kept in the accounting department, but he would not look at the insurance policy and had no recollection of looking at any insurance policy during the time that the company was insured by Harleysville.   <u>Id.</u> at pp. 30-31. The company simply followed the recommendations of the Lechner & Stauffer agency regarding coverage.   <u>Id.</u> at pp. 32-33.

[10] In 2011, Miley sold the company to a Michael Fallon.   <u>Dep. Miley</u>, p. 11.

David Kauffman, a vice-president of the Lechner & Stauffer Agency testified that the agency was a broker for different insurance companies and that Harleysville Insurance was one of several carriers that it could produce an account for commercial insurance. <u>Dep. David Kauffman</u>, pp. 8-11, attached as Exhibit "E". As an insurance broker, the agency would consider many different insurance companies that might satisfy the needs of David Randall Associates based on different coverages and pricing. <u>Id</u>. at p. 17. The agency would look to secure the best coverage at the best price for its client, David Randall Associates. <u>Id</u>. at pp. 17-20. Harleysville Insurance was one of several commercial insurers that the agency could secure coverage from. <u>Id.</u> at p. 11. Mr. Kauffman could not recall how the David Randall account was originated. <u>Id.</u> at pp. 11-12.

In 2003, the Lechner & Kauffman agency was authorized by David Randall Associates to solicit a quote for commercial insurance from Harleysville and submitted a broker of record notice to the Harleysville underwriter. <u>Id</u>. at pp. 22-23. Kauffman testified that at the time the account had been insured by Lexington Insurance and that they [David Randall Associates] may have wanted an alternative quote. <u>Id</u>. at p. 16. Kauffman testified that his practice at the time was to call different insurers to assess their interest in the proposed risk to get the best coverage at the best price. <u>Id.</u> at pp. 16-18. The agency negotiated with the Harleysville underwriter in 2003 to secure a quote for insurance. <u>Id</u>. at pp. 20-24.

Each year, the agency would meet with the account to review changes in the business, to review the account and the insurance marketplace. <u>Id</u>. at pp. 31-32.

This would typically include whether to market the risk to other insurers. <u>Id</u>. at p. 32. The agency negotiated with the Harleysville underwriter for the renewal of the policy for the July 1, 2005-July 1, 2006 term. <u>Dep. Kauffman</u>, pp. 24-27. On June 27, 2005, Kauffman emailed the underwriter, Judy Davis, to request that the underwriter bind renewal coverage effective July 1st. <u>Id</u>. at pp. 24-25, 42-43.

As to the renewal policy, Kauffman testified it would be uploaded into the agency management system. <u>Id</u>. at pp. 43-44. Kauffman testified that the account manager would review the policy renewal to assess any changes to coverage, such as policy limits, deductibles and policy form changes. <u>Id</u>. at pp. 45-46. Kauffman did not have a specific recollection of the 2005 policy renewal. <u>Id</u>. at p. 53. He would typically review a renewal policy "once it hits my desk". <u>Id</u>. at p. 56. He relied on the account managers to bring to his attention any changes in coverage. <u>Id</u>. at pp. 56-57. In reviewing the policy, he affirmed that the Form ST-7511 is a notice to the policyholder to inform them that the renewal contains a new exclusion. <u>Id</u>. at p. 58. Kauffman testified that he could not recall any discussions with the account regarding the amendatory endorsement and was unaware of any request to delete the exclusion from the policy. <u>Id.</u> at pp. 64-65.

An account manager at Lechner & Stauffer, Carol Kress[11], testified that the agency kept hard copy files of a renewal policy including those from Harleysville, which were received from the carrier in the mail. <u>Dep. Carol Kress</u>, pp. 12-14, Exhibit "G". The policy would then be routed to the account manager to review and

---

[11] Kress oversaw the account manager, Jenn Davis, who was assigned to the David Randall Associates account. <u>Kress</u>, pp. 9-10, Exhibit G . She reported to the agency principal, John Kauffman. <u>Id</u>. at p. 8.

to update any information that was different from what was in the database.  Id. at pp. 12-18.    Kress testified that when given the choice by an insurer, the agency always chose to have the renewal commercial policies sent to the agency and not directly to the insured.  Id. at p. 19.  The agency would then deliver the policies to the insured as part of their customer service.  Id.  Kress recalled that in 2005, the insured's copy and the agent's copy of the renewal policy was mailed by Harleysville to the agency.  Id. at p. 19.    The agency's practice was that the renewal policy would be given to the agency producer to deliver to the insured and to go over its terms on a yearly basis, unless the insured was too busy to meet.  Id. at pp. 20-21, 25.

The Lechner agency was aware that new or revised policy forms would be notated on the renewal Declarations with an asterisk.  Id. at p. 29.  The change would be noted by the account manager and the account executive would communicate it to the client, the insured.  Id.   This applied to the Form ST-7511 which informed the insured of the inclusion of the exclusion for unsolicited faxes. Id. at pp. 35-37, 40-41.  In reviewing the agency's log notes, Kress identified that the agency received a copy of the renewal policy on July 19, 2005.  Id. at pp. 39-40, 44-45, 48-49.  Kress was familiar with the exclusionary endorsement and believed that it remained on the policy on subsequent removals.  Id. at p. 41.  Kress testified that from a review of the logs, there was no communication from the agency to Harleysville to request a deletion of the amendatory endorsement.  Id. at pp. 56-57.

Based on the evidentiary record, the insured's principal had no particular expectation regarding the coverage as he did not review the insurance policy and left the scope of coverage to David Randall Associates' agent. The renewal policy, together with Form ST-7511, advising of the inclusion of the exclusionary endorsement, was sent to the broker. Notice of the exclusion is, therefore, imputed to David Randall Associates. As the broker was a professional insurance concern, inclusion of the notice and the exclusion sufficed to establish awareness and understanding of the exclusion. The Unsolicited Fax exclusion is part of the policy, applies to the City Select claim and no basis exists on which to preclude reliance on the exclusion.

### G.   Knowing Violation Exclusion Applies to DRA Liability

Coverage B contains the Knowing Violation exclusion which states that the insurance does not apply to:

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

See Policy, Coverage B. Paragraph 2, Exclusions, Exhibit H to Complaint, Document 1-8, Page 61. The facts as found by the district court in the underlying action were that DRA knowingly engaged in a "blast fax" advertising campaign despite the knowledge that it did not have the consent or authorization of the target recipients and in the face of repeated objections of many recipients who received those faxes. Judge Simandle found that Miley directed his administrative assistant, April Clemmer, to contact a fax advertising vendor, B2B to obtain pricing and

distribution details of its marketing services. Clemmer prepared and sent an approved advertisement to B2B with a list of zip codes to "solicited for business". The fax advertisement stated that it was being sent to the recipient because some person at the business had supplied the fax number and permission to send the fax, despite the fact that the insured had no such information.   The first fax transmission took place on March 29, 2006.

After the blast fax, DRA received multiple complaints about the unsolicited nature of the advertisements and that the identified toll-free number to opt out was ineffective or unavailable. Opinion at p. 11. Several persons suggested that the transmission violated the law.  Id. On March 29, 2006, Clemmer sent a list of the "annoyed recipients" to B2B and requested that they be removed from any future distribution.   Id.   Notwithstanding these complaints, Clemmer wrote to B2B on March 31st, and stated that DRA "would like to do another marketing blitz" for an upcoming raining day[12] and requested 12,000 transmissions of the advertisement to be sent to multiple regions.  Id.  Clemmer paid for the send fax blast campaign.  Id. at p. 12.

Clemmer continued to receive complaints about the faxes including some who threatened to pursue legal action and/or to contact the Federal Communications Commission.  Id. at p. 12.  Several of the recipients told her that the law required an opt-out toll free number and that the identified phone number was unavailable. Id.

---

[12] DRA supplies roof installation and repair services.

Despite the complaints and threats of legal action, Clemmer requested a third blast fax transmission on April 12, 2006 in addition to providing new numbers to be removed from the distribution list.  Id.    Clemmer paid B2B with an instruction to send out the next blast on April 14, 2006.  Id.    On April 17th, Clemmer renewed a request for the removal of certain fax numbers.  Despite the continuing complaints about the unauthorized faxes, DRA authorized a fourth fax blast campaign on May 12, 2006, requesting that 12,000 faxes be sent to the original targeted area with an instruction that it be completed on May 15th.  Id.  at p. 13.

The court found that DRA conceded that Miley approved the blast fax campaign for DRA.  Id. at p. 27.  The court held that DRA never obtained the recipients' express consent prior to contracting with the B2B vendor and that it never possessed a list of intended recipients nor had requested such a list from B2B. Id. at p. 28.  Because DRA sent fax advertisements to businesses to fax numbers in a targeted zip code without having requested a list of the intended recipients and continued to do so notwithstanding multiple complaints that the faxes were unauthorized and might prompt legal recourse, such conduct can only be characterized as intentional with the knowledge that the sending of the faxes would violate the rights of another.   Such conduct does not fall within the ambit of negligence.  The continued authorization of the blast fax campaign in the face of the receipt of complaints from recipients and absent any evidence of prior authorization to send such faxes is intentional conduct within the scope of the Knowing Violation

exclusion. See e.g., <u>State Auto Property & Cas. Ins. Co. v. LaGrotta</u>, 529 Fed. Appx. 271, 275 (3d Cir. 2013) (applying exclusion to intentional tortious conduct); <u>London v. Pa. Child Care, LLC</u>, 3:09-cv-2256, 2010 WL 1507103 (M.D. Pa. Apr. 14, 2010).

## IV.   <u>CONCLUSION</u>

For the aforementioned reasons, Plaintiff Nationwide Mutual Insurance Company respectfully requests that the court grant its motion for summary judgment on its declaratory judgment complaint and requests that the court issue a declaration that the commercial general liability insurance policy issued by its predecessor in interest, Harleysville Mutual Insurance Company affords no liability coverage for the judgment secured by City Select Auto Sales, Inc. on behalf of the class in the underlying action, <u>City Select Auto Sales, Inc. v. David Randall Associates, Inc. and Raymond Miley, III</u>.

SWARTZ CAMPBELL LLC

<u>/s/ William T. Salzer</u>
William T. Salzer
Attorneys for Plaintiff,
Nationwide Mutual Insurance Company