**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NATIONWIDE MUTUAL INSURANCE COMPANY** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| | : | **NO. 20-4972-JMY** |
| v. | : | |
| | : | |
| **DAVID RANDALL ASSOCIATES, INC.** et al. | : | |
| Defendants. | : | |

**MEMORANDUM**

**Younge, J.**                                                                                       **September 30, 2022**

## I.     INTRODUCTION

Currently before this Court are four (4) motions:

1. Defendant City Select Auto Sales, Inc.'s ("City Select") Motion to Dismiss for Lack of Jurisdiction or to Stay (ECF No. 5);

2. Plaintiff Nationwide Mutual Insurance Company's ("Nationwide") Motion to Certify Class (ECF No. 21);

3. Plaintiff Nationwide's Motion for Summary Judgment (ECF No. 20); and

4. Defendant City Select's Motion for Summary Judgment (ECF No. 22).

The Court finds these motions appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons set forth in this Memorandum, Plaintiff Nationwide's Motion to Certify Class (ECF No. 21) and Motion for Summary Judgment (ECF No. 20) will be granted, and Defendant City Select's Motion to Dismiss for Lack of Jurisdiction or to Stay (ECF No. 5) and Motion for Summary Judgment (ECF No. 22) will be denied.

## II.    PROCEDURAL HISTORY

On October 7, 2020, Plaintiff Nationwide, an insurance provider, filed this declaratory judgment class action against Defendants—City Select and:

> All persons who were successfully sent one or more faxes during the period March 29, 2006, through May 16, 2006, stating, "ROOF LEAKS??? REPAIRS AVAILABLE. Just give us a call and let our professional service technicians make the repairs!" and "CALL: David/Randall Associates, Inc. TODAY (collectively, "the Class").

(Complaint (hereinafter, "Compl.") ¶ 54, ECF No. 1.)  Though David Randall Associates, Inc. ("DRA"), the insurance policyholder, is listed in the caption of this case and had sent the aforementioned faxes, DRA is now believed to be defunct and has only been named as a potentially interested party in this action. (Compl. ¶ 4, ECF No. 1.)  For context, this is not the first time that Plaintiff has sought declaratory relief in the United States District Court for the Eastern District of Pennsylvania (the "Eastern District").  On January 24, 2013, Plaintiff brought a civil action against DRA, seeking a declaration that Plaintiff did not have a duty—under the insurance policy's (the "Policy") "property damage" provisions—to defend or indemnify DRA for transmitting thousands of unsolicited faxes in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (the "TCPA"). *See Nationwide Mut. Ins. Co. v. David Randall Assocs., Inc.*, No. 12-CV-4208, 2013 WL 271816 (E.D. Pa. Jan. 24, 2013), *aff'd,* 551 F. App'x 638 (3d Cir. 2014).  Though arguments for insurance coverage for TCPA violations could have theoretically been made under both the Policy's "property damage" and "personal and advertising injury" provisions, Plaintiff and DRA "agree[d] that no coverage exist[ed] under other provisions of the Policy which govern advertising injury and personal injury." *Id.* at *3 n.2.  Thus, in granting Nationwide's motion for summary judgment, the Eastern District declared that the "property damage" provisions did not impose upon Nationwide a duty to defend or indemnify DRA. *Id.* at *3-*5.  On January 9, 2014, the Third Circuit affirmed this decision. *See Nationwide Mut. Ins. Co. v. David Randall Assocs., Inc.*, 551 F. App'x 638, 639 (3d Cir. 2014).

As a recipient of DRA's unsolicited faxes, Defendant City Select filed (and would later become the representative of) a class action lawsuit against DRA for violating the TCPA. On

2

March 27, 2015, the United States District Court for the District of New Jersey entered a judgment in favor of Defendant City Select and against DRA for $22,405,000—whereby each one of the 44,810 identified violations (*i.e.,* the sending of an unsolicited fax) incurred a $500 penalty. *See City Select Auto Sales, Inc. v. David/Randall Assocs., Inc.*, 96 F. Supp. 3d 403, 422, 428 (D.N.J. 2015). Although the Eastern District litigation involved the question of whether the Policy's "property damage" provisions were a source of insurance coverage for damages caused by DRA's numerous violations of the TPCA, there is no dispute that the controversy involved the very same facts as were involved in the New Jersey litigation. Thereafter, in a brazen attempt to find a source of funding to secure its judgment in the New Jersey action, Defendant City Select launched what could only be characterized as a collateral attack on the Eastern District decision. Deciding not to turn to the Eastern District to seek reconsideration of its prior determination, Defendant City Select instead, on February 28, 2020, filed a declaratory judgment action against Plaintiff, in an Ohio state court, seeking a declaration that Plaintiff is obligated, pursuant to the same insurance policy at issue in the Eastern District litigation, to indemnify DRA pursuant to the Policy's "personal and advertising injury" provisions. Though both the Eastern District and the Third Circuit have thoughtfully considered Plaintiff and DRA's arguments regarding the scope of the Policy's coverage as it relates to TCPA violations, Defendant City Select seeks to exploit the good-faith concession made by Plaintiff and DRA that seemingly dissuaded the Eastern District from even analyzing the "personal and advertising injury" provisions. However, perhaps even more surprising and jarring, Defendant City Select attempts to place itself in the shoes of DRA, the actual policyholder, and to proffer what DRA reasonably expected, knew, or understood about the "personal and advertising injury" provisions during the policy renewal process—almost as if DRA

did not have the opportunity in the 2013 Eastern District litigation to raise (instead of conceding) these very arguments.

As of now, Plaintiff has filed a motion to certify the Class and a motion for summary judgment, seeking another declaration—this time, under the "personal and advertising injury" provisions—that Plaintiff still does not have an obligation to indemnify DRA (or the fax recipients more broadly) in connection with the $22,405,000 judgment secured by Defendant City Select against DRA. In response, Defendant City Select argues that this Court does not have jurisdiction under the anti-aggregation principle or, in the alternative, that this Court should stay this litigation in light of the February 2020 Ohio action; though, that action has been stayed by the Court of Common Pleas of Franklin County, Ohio—until September 30, 2022—in order to gauge this Court's determination on Plaintiff's jurisdictional arguments. (*See* Case No. 20 CV 001722, Journal Entry, 06/30/22.) Additionally, Defendant City Select has filed a motion for summary judgment, seeking a declaration that Plaintiff is obligated to indemnify DRA under the "personal and advertising injury" provisions.

### III. LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

4

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Additionally, the Third Circuit and the Eastern District have instructed that "[u]nder Pennsylvania law, '[c]ontract interpretation is a question of law that requires the court to ascertain and give effect to the intent of the contracting parties as embodied in the written agreement.'" *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 426 (E.D. Pa. 2020) (quoting *In re Old Summit Mfg., LLC*, 523 F.3d 134, 137 (3d Cir. 2008)). Further, as the Pennsylvania Supreme Court has noted, "[w]hen the language of an insurance policy is clear and unambiguous, a court applying

5

Pennsylvania law is required to give effect to that language." *Id.* (quoting *401 Fourth St., Inc. v. Invs. Ins. Grp.*, 583 Pa. 445, 455 (2005)). Finally, the Pennsylvania Supreme Court has advised courts construing Pennsylvania law not to "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Id.* (citing *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606 (1999)).

**IV.  DISCUSSION**

As noted above, there are four motions before this Court: (1) Defendant City Select's Motion to Dismiss for Lack of Jurisdiction or to Stay; (2) Plaintiff's Motion to Certify Class; (3) Plaintiff's Motion for Summary Judgment; and (4) Defendant City Select's Motion for Summary Judgment. This Court will review each motion in turn—by first resolving the threshold matters of jurisdiction and class certification before proceeding to the merits of each party's motion for summary judgment.

   **1. <u>Jurisdiction</u>**

As a threshold matter, Defendant City Select challenges this Court's jurisdiction over the declaratory judgement action—as each individual claim or violation is only worth $500. Thus, the anti-aggregation rule would be violated as distinct claims of individual members of the Class would be aggregated to reach the $75,000 amount-in-controversy requirement for purposes of diversity jurisdiction. However, the Third Circuit—relying on Seventh Circuit precedent—reasoned that the anti-aggregation rule should not be extended to amount-in-controversy considerations involving TCPA class actions because:

> [the insurer] has not aggregated multiple parties' claims. From its perspective there is only one claim—by its insured, for the sum of defense and indemnity costs…the anti-aggregation rule does not apply…just because the unitary controversy between these

> parties reflects the sum of many smaller controversies. No more need be said on this subject.

*Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 398 (3d Cir. 2016) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 539 (7th Cir. 2006)).  As an extension of this reasoning, the Third Circuit also noted that:

> [t]he only "amount in controversy" that the insurer was then concerned with was its total indemnity and defense obligation; it presumably had no interest in the way the indemnity sum might later be divided among the various class members. Its dispute was thus with its insured, not the class."

*Id.* at 399.  Therefore, with the amount-in-controversy not running afoul of the anti-aggregation rule and totaling well over $75,000, and with Plaintiff being a citizen of Ohio, Defendant City Select being a citizen of New Jersey, and DRA being a citizen of Pennsylvania, this Court has the requisite diversity jurisdiction to preside over this action. *See* 28 U.S.C. § 1332(a).

**2. <u>Class Certification</u>**

Before analyzing the summary judgment motions, it is also important, as another threshold matter, to address Plaintiff's motion to certify the Class.  After all, clarity on the full scope of the defendants in this action will be of great consequence for the declaratory relief that has been sought by and that will ultimately be granted to Plaintiff.  As a reminder, the Class encompasses:

> All persons or entities, with whom David Randall Associates did not have an established business relationship, who were successfully sent one or more unsolicited faxes during the period March 29, 2006, through May 16, 2006, stating, "ROOF LEAKS??? REPAIRS AVAILABLE Just give us a call and let our professional service technicians make the repairs!" and "CALL David/Randall Associates, Inc. TODAY."

Pursuant to Federal Rule of Civil Procedure 23(a), a class may be certified if the following four (4) prerequisites are met:

> (1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Under prerequisite (1), the identification of 44,810 TCPA violations shows that any attempt to join all members would likely be impracticable. Under prerequisite (2), one common question of law that connects the Class is whether the "property and advertising injury" provisions extend to TCPA violations, which would be outcome-determinative in assessing whether Plaintiff is obligated to indemnify DRA. Under prerequisite (3), members of the Class (including its representative, Defendant City Select) all have the same claim and shared interest in DRA having coverage under the Policy. Relatedly, each member of the Class would likely proffer the same or nearly identical legal theories in the case—whereby they could then recoup damages to cover as much of the $500 penalty that they are entitled to under the TCPA. Finally, under prerequisite (4), by keeping the Class identical to the class that had been certified in the previous action (*i.e.*, the action where Defendant City Select secured the $22,405,000 judgment), it would ensure that everyone's interests are fairly protected in this current action—especially where there is the potential to obtain a declaration that Plaintiff has an obligation to indemnify DRA for its TCPA violations. Further, Federal Rule of Civil Procedure 23(b)(2) permits a class to be formed where declaratory relief would be appropriate for the class as a whole. Fed. R. Civ. P. 23(b)(2).

In addition to satisfying the four (4) prerequisites—as outlined in Rule 23(a)—and finding that declaratory relief would be appropriate for the class as a whole—as contemplated under Rule 23(b)(2)—it is also worth noting that Defendant City Select "does not oppose Nationwide's motion to recertify the class…for the purpose of adjudicating the class's coverage claims." (Defendant

City Select's Response to Plaintiff Nationwide's Motion for Defendant Class Certification, p. 1, ECF No. 26.) However, Defendant City Select only asks that the same counsel be certified in this matter. This Court will permit Defendant City Select's request to maintain the same counsel for the Class; though, Defendant City Select's request is likely rendered moot in light of this Court's Order granting Plaintiff Nationwide's motion for summary judgment, as further discussed below.

### 3. **Plaintiff's Motion for Summary Judgment**

The central issue in this action is whether the Policy's "personal and advertising injury" provisions impose an obligation upon Plaintiff to indemnify DRA for TCPA violations resulting in a $22,405,000 judgment secured by City Select against DRA. The "personal and advertising injury" provisions read, in relevant part, as follows:

> We [Nationwide] will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies… However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(Compl., Ex. H, pp. 60-61, ECF No. 1-8.) Further, "[p]ersonal and advertising injury" is defined to include: "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: *(e) Oral or written publication, in any manner, of material that violates a person's right of privacy*." (Compl., Ex. H, p. 69, ECF No. 1-8.) (emphasis added). The Third Circuit reviewed an insurance policy that had a clause that was almost identical to the aforementioned subsection (e) and determined that this language "provides coverage only for violations of the privacy interest in secrecy, *and thus does not cover violations of a right to seclusion*." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 408 (3d Cir. 2016) (emphasis added). This conclusion is significant because the Third Circuit—relying on Pennsylvania Superior Court precedent—held that the TCPA only protects the right to seclusion

by preventing people from being inundated with unsolicited messages (*i.e.*, a TCPA violation does not encompass a violation of the privacy interest in secrecy that is covered by the Policy). *Id.* (referencing *Telecommunications Network Design v. Brethren Mut. Ins. Co.*, 2010 PA Super 155, 5 A.3d 331, 336–37 (2010)). In fact, the Third Circuit reasoned that the TCPA is less focused on *secrecy* as "[t]he content of the messages (*i.e.*, whether they include private information) is immaterial under the TCPA." *Id.* Taken together, the Third Circuit, applying Pennsylvania law, has refused—as a matter of law—to classify TCPA violations as an "advertising injury" under the Policy. *Id.* at 409–10 ("We emphasize that this case raises the exact same question as did *Brethren* [whether TCPA violations are an "advertising injury"]—the policy language is identical [*i.e.*, the same language as subsection (e) above], the underlying TCPA violation is identical [*i.e.*, the sending of unsolicited faxes], and the claimed damages for that violation are identical. We thus defer to the intermediate appellate court's decision [that TCPA violations are not covered as an "advertising injury"] as a well-reasoned interpretation of Pennsylvania state law.").

In addition to this outcome determinative Third Circuit and Pennsylvania Superior Court precedent, Plaintiff also notes that the policy renewal clearly articulated an exclusion for TCPA violations:

**EXCLUSION – UNSOLICITED FAXES, TELEPHONE CALLS AND EMAILS**

**IMPORTANT NOTICE TO POLICY HOLDERS**

Your renewal policy has a new form entitled Exclusion-Unsolicited Faxes, Telephone Calls and Emails attached to it. This represents a reduction in coverage.

The form excludes personal and advertising injury arising from unsolicited faxes, telephone class, or emails and other similar acts and practices which are subject to and prohibited by any state or federal law, rule or regulation governing the abuses associated with unsolicited faxes…including but not limited to:
    a.   the Federal Telephone Consumer Protection Act…

(Compl., Ex. H, p. 46, ECF No. 1-8.) In response, Defendant City Select suggests that Plaintiff "presumably" never made DRA (nor its broker) aware of this policy change, based upon the fact that they could find no record that Nationwide ever made DRA aware of a change in coverage. Therefore, Defendant City Select surmises that DRA's reasonable expectations that the policy would remain the same upon renewal (unless specifically told otherwise) ultimately renders the TCPA coverage exclusion ineffective. (Def. City Select's Mot. for Summary Judgment, Memorandum, pp. 8-9, ECF No. 22-1.) Defendant City Select's self-interested assertions in this matter, however, do not assist the Court in resolution of the main issue herein. The Third Circuit, however, has given further guidance on the scope of the reasonable expectations doctrine when it noted that:

> Pennsylvania case law…dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured. In most cases, the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations. Courts, however, must examine the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured. As a result, even the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage. However, this aspect of the doctrine is only applied "in very limited circumstances" to protect non-commercial insureds from policy terms not readily apparent and from insurer deception. Absent sufficient justification, however, an insured may not complain that his or her reasonable expectations were frustrated by policy limitations that are clear and unambiguous.

*Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 440 (3d Cir. 2006) (quoting *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005)). As described above, the reasonable expectations doctrine should only be applied in "very limited circumstances" and seemingly with a focus on protecting **non-commercial insureds**. In fact, the United States District Court for the Western District of Pennsylvania "decline[d] to apply [the] 'reasonable expectation' doctrine in this case because [the plaintiff was] a sophisticated insured who used a broker to purchase liability insurance policies for its business." *MDL Cap. Mgmt., Inc. v. Fed. Ins. Co.*, No.

05CV1396, 2006 WL 2974165, at *9 (W.D. Pa. Oct. 16, 2006), *aff'd in part, rev'd in part and remanded,* 274 F. App'x 169 (3d Cir. 2008) (referencing *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 440 (3d Cir. 2006)).  In addition to courts not typically applying the doctrine to commercial insureds, the Eastern District has also highlighted how: "the reasonable expectation doctrine is of limited value here, ***where [the plaintiff] is not the insured*** and ***cannot speak to [the insured's] expectations*** and where the Pennsylvania Supreme Court has only applied the doctrine when ***noncommercial insureds*** allege misrepresentation on the part of the insurer." *Yakitori Boy, Inc. v. Starr Indem. & Liab. Co.*, No. CV 18-4094, 2019 WL 2724039, at *6 (E.D. Pa. June 28, 2019) (emphasis added).  In this case, the sophistication of the parties, the use of a broker, and the fact that Defendant City Select is not the insured or the actual policyholder similarly makes the reasonable expectations doctrine of little value or import in this action.

Relatedly, Defendant City Select, in its motion for summary judgment, attempts to invoke pronouncements from the Third Circuit and the Pennsylvania Supreme Court to show how the TCPA coverage exclusion had not been properly communicated to DRA—the insured party:

> [A]n insurer may not make unilateral changes to an insurance policy unless it both ***notifies the policyholder of the changes*** and ensures that the ***policyholder understands their significance***. *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311 (3d Cir. 1994) (referencing *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 454 (1987) (emphasis added);
>
> [W]here…an individual applies and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that ***the insured was notified of, and understood, the change, regardless of whether the insured read the policy***. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 904 (3d Cir. 1997), *as amended* (Aug. 28, 1997) (quoting *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311 (3d Cir. 1994) (quoting *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 454 (1987) (emphasis added).

(Def. City Select's Mot. for Summary Judgment, Memorandum, pp. 11-12, ECF No. 22-1.) However, Defendant City Select's argument does not carry much weight—especially since

Defendant City Select is not the ***policyholder***, nor is Defendant City Select the ***insured*** in this action. Furthermore, its argument is based upon an assumption that such notification was not given simply because they could find no record of it. In fact, when the actual policyholder and insured party—DRA—had the opportunity to proffer these arguments, DRA, instead, "agree[d] that no coverage exist[ed] under other provisions of the Policy which govern advertising injury and personal injury." *Nationwide Mut. Ins. Co. v. David Randall Assocs., Inc.*, No. 12-CV-4208, 2013 WL 271816, at *3 n.2 (E.D. Pa. Jan. 24, 2013), *aff'd,* 551 F. App'x 638 (3d Cir. 2014). While this Court may never know DRA's rationale for not pursuing—in the 2013 Eastern District litigation—coverage claims under the Policy's "personal and advertising injury" provisions, this Court declines to extend the precedent regarding the reasonable expectations doctrine and the awareness and understanding of an insured or policyholder to a ***third-party beneficiary***—who later seeks to make arguments and assertions that were never once proffered by the actual policyholder in litigation focused on this very Policy.

Taken together, the Third Circuit and Pennsylvania Superior Court's bar on "advertising injury" coverage for TCPA violations suggests that the "personal and advertising injury" provisions within the Policy in this case do not cover DRA's TCPA violations. Alternatively, even if the "personal and advertising injury" provisions had theoretically covered DRA's TCPA violations, the presence of the exclusion within the Policy should have placed a sophisticated, commercial party (and its broker) on notice regarding policy language that indicated a reduction in or change to coverage. However, such an inquiry into the understandings and expectations of DRA—the actual policyholder and insured party—is futile, as DRA never proffered these arguments in similar litigation involving this very same Policy and these very same provisions. For the foregoing reasons, Plaintiff Nationwide's motion for summary judgment is hereby granted.

4. **Defendant City Select's Motion for Summary Judgment**

As outlined above, this Court has granted Plaintiff's motion for summary judgment. Thus, by extension, Defendant City Select's motion for summary judgment is hereby denied. This Court's denial of Defendant City Select's motion is based on the Third Circuit and Pennsylvania Superior Court's determination that "advertising injury" and subsection (e) do not apply to TCPA violations and the presence of a waiver within the Policy excluding coverage for TCPA violations. These precedents and the policy exclusion demonstrate that there is no genuine issue of material fact and that Plaintiff's motion for summary judgment can and must be granted as a matter of law.

V.   **CONCLUSION**

For the reasons stated above, this Court grants Plaintiff Nationwide's Motion to Certify Class (ECF No. 21) and Motion for Summary Judgment (ECF No. 20) and denies Defendant City Select's Motion to Dismiss for Lack of Jurisdiction or to Stay (ECF No. 5) and Motion for Summary Judgment (ECF No. 22).

An appropriate Order follows.


BY THE COURT:

*/s/ John Milton Younge*
**JUDGE JOHN MILTON YOUNGE**